OPINION OF THE COURT
Philip S. Straniere, J.
Plaintiff Lynn Kudelko commenced this action against the defendants Barbara Rose Dalessio, also known as Barbara Ross, Peter C. Diorio, Edythe Dagostino, also known as Edythe Dalessio, Connie Profaci Realty, Nicholas Guzzone, Powerpoint Inc., and Louis Berardoco, alleging that the defendants engaged in a course of conduct which resulted in the theft of plaintiff’s identity, impairment of her credit and caused her damages. The matter was commenced in Supreme Court, Richmond County, and was transferred to Civil Court pursuant to CPLR 325 (d). Plaintiff has discontinued her action against defendants Power-point Inc. and Louis Berardoco. Connie Profaci Realty was dismissed as a defendant after a successful summary judgment motion.
Currently before the court is a motion by defendant Guzzone for summary judgment dismissing the complaint on the grounds that, even if plaintiff were to prove all of the allegations of her complaint in regard to Guzzone’s liability, the complaint must be dismissed because the plaintiff has failed to establish any damages. Plaintiff has opposed the motion. The other defendants have not taken a position in regard to Guzzone’s application. Counsel for the parties presented extensive oral argument in support of their respective positions.
Defendant Guzzone contends that, in order to prevail, the plaintiff must prove that she suffered actual monetary damages as a result of defendant Guzzone’s actions. Guzzone alleges that $600 is the only damages that the plaintiff asserts she suffered and every other claim in that regard is speculative. Plaintiff counters that, although she may have only suffered out-of-pocket expenses of $600, her credit rating has been impaired by defendant’s actions and this will cost her money in the future since lenders and credit card companies will charge her a higher interest rate.
Legal Issues Presented
A. Does New York Have a Civil Remedy for Identity Theft?
The New York State Legislature has taken steps to deal with the burgeoning crisis of identity theft. General Business Law § 380-s, which is part of article 25, the Fair Credit Reporting Act, provides:
*652 “Theft of Identity. No person, firm, partnership, corporation, or association or employee thereof shall knowingly and with the intent to defraud, obtain, possess, transfer, use or attempt to obtain, possess transfer, or use credit, goods, services or anything else of value in the name of another person without his or her consent.”
At the same time General Business Law § 380-Z was amended to provide:
“Any person, firm, partnership, corporation, or association whose knowing and willful violation of section three hundred eighty-s of this article resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided, and any consumer reporting agency or user of information who or which willfully and knowingly fails to comply with any requirement imposed under this article with respect to any consumer is liable to that consumer in an amount equal to the sum of:
“(a) Amy actual damages sustained by the consumer as a result of such failure or as a result of a violation of section three hundred eighty-s of this article;
“(b) Such amount of punitive damages as the court may allow; and
“(c) In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney’s fees as determined by the court.”
General Business Law § 380-s and the subdivision of General Business Law § 380-Z referring to General Business Law § 380-s were added by the Legislature effective November 1, 2002. If these statutes are applicable to the facts of this case, then defendant’s motion would have to be denied since if plaintiff successfully proved identity theft, in addition to compensatory damages, the defendant could be assessed punitive damages. A review of plaintiffs complaint reveals that plaintiff alleges that the defendants began their scheme of theft of her identity in May 2002 after defendants Barbara Rose Dalessio and Peter Diorio moved into the premises at 211 Grasmere Drive, Staten Island, New York, which was owned by the plaintiff. This date was prior to the effective date of the statute. Plaintiff in her affidavit in opposition to the Guzzone motion states that “within one (1) month” of May 2002 these defendants began opening *653 credit card accounts in plaintiffs name but that plaintiff did not learn of the existence of “these accounts until January 2003,” a date after the effective date of the statute, November 1, 2002.
A question of fact exists as to whether or not any of the fraudulent activities plaintiff alleges the defendants, including defendant Guzzone, committed occurred after November 1, 2002. If they did, General Business Law §§ 380-s and 380-Z would be applicable to the situation. If these statutes are applicable, the plaintiff would be entitled to seek punitive damages.
Since a statutory claim for identity theft exists, defendant Guzzone’s motion to dismiss must be denied. A question of fact exists as to whether or not any of the defendants’ actions took place after November 1, 2002 so that General Business Law article 25 would apply.
The above being said, a review of the pleadings and plaintiffs opposition to this motion reveals that the plaintiff did not plead a cause of action based on defendant Guzzone violating this statute. Neither did the defendant raise the statute as an issue in its answer. In fact, at oral argument, counsel for both parties stated that there was no statute applicable to the facts of this case. As such, the plaintiff is precluded from asserting a cause of action under this section. General Business Law § 380-n sets the statute of limitations for a claim under this section as two years from the date on which the liability arises or two years after the discovery of the misrepresentation by the individual adversely affected by the misrepresentation. If plaintiff were to seek to assert such a claim at this time, it would be time-barred by this statute.
B. Does General Business Law Article 25 Apply to Events before November 1, 2002?
As stated above, General Business Law §§ 380-s and 380-Z were effective November 1, 2002. Does this mean that these statutes are not applicable to the actions of any of the defendants if they took place prior to that date? In general, when a statute creates a right of action where one did not previously exist, such a statute has only a prospective application; likewise, a law that attempts to retroactively create a liability in relation to a transaction where no liability previously existed is often found unconstitutional (McKinney’s Cons Laws of NY, Book 1, Statutes § 53). This leads to the conclusion that General Business Law article 25 will not apply to actions of defendant Guzzone occurring prior to November 1, 2002. In order to recover for the harm plaintiff suffered prior to that date, another ground for recovery would have to be proved.
*654 C. Does the Plaintiff Have Any Actual Damages?
Defendant asserts that plaintiffs action against defendant Guzzone must be dismissed because the plaintiff has not come forth with any proof of having suffered actual damages. Defendant has raised several valid points as to whether or not the plaintiff has in fact suffered any actual monetary loss as a result of defendant Guzzone’s actions. Plaintiff alleges that the interest rate plaintiff was charged on her credit cards was raised as a result of defendant’s action. If proven, this would only be relevant if plaintiff made any purchases and payments to a credit card issuer with the higher rate being charged. If she paid her charges or the defendants paid plaintiffs bills in a timely manner so that no interest was assessed, then plaintiff would not have incurred any actual damages.
The documentation submitted by the plaintiff shows that the interest rate on her BankOne credit card increased from 11.60% in August 2003 to 19.99% in September 2003, nine months after she alleges she discovered the identity theft and notified the credit rating companies and the credit card issuers. Plaintiff, to prevail on her claim, must explain both this delay and that the increase in her interest rate resulted from defendant’s actions and not some other cause. Plaintiff has not submitted any documentation that would establish that she applied for credit since the date of the identity theft and that credit was denied or issued at a higher interest rate because of the defendant’s actions.
Plaintiff asserts that her “credit rating” with the three major credit rating firms declined as a result of the adverse credit history created under her identity by the defendants. Plaintiff has provided documentation that her scores after July 2003 were below 600 with two of the three companies. However, plaintiff has not provided any documentation as to what her score was prior to May 2002 when the defendants allegedly commenced their scheme. Although there appear to be six accounts showing delinquencies opened within the time period plaintiff asserts the defendants were engaged in their identity theft scheme, the credit reports also show delinquencies and late payments on a Staten Island Savings Bank mortgage taken out in May 2002 for an undisclosed premises. Plaintiff does not appear to be alleging that the delinquencies on the mortgage payment resulted from the defendants’ afctions. There is no showing from plaintiff that the late payments on the mortgage account are not relevant to her declining credit score.
*655 Plaintiff has attached as an exhibit her credit score with TransUnion as 702 as of December 23, 2004, which would seem to indicate that any adverse ratings resulting from the actions of the defendants have been erased from her credit report. By this documentation, plaintiff is representing that it took her almost two years to repair her credit. In fact, the TransUnion report shows only two accounts as reported with a negative history. One is a Home Depot account that plaintiff indicates is one of the fraudulently opened credit cards. The second negative account is the Staten Island Savings Bank mortgage. All of the other wrongfully opened accounts have apparently been removed from plaintiff’s credit history. The fact that one or more of these accounts may still improperly be appearing may give rise to a cause of action pursuant to General Business Law article 25 against the entities reporting these accounts and carrying them on the plaintiffs credit history. There is also a question as to whether or not the Home Depot account being reported is the same fraudulent account since it is listed as opened in August 2002 while the one which plaintiff asserts was part of the identity theft was opened in July 2002. In addition, it appears to have a different account number than the one opened by the defendants. Also, the late payment being reported is as of April 2003, a date four months after which plaintiff states she learned of the identity theft and notified the credit reporting agencies and cardholders.
In spite of plaintiff having some apparent problems establishing the relevancy of certain events to their effect on her credit scores, it is not the purpose of the court to decide the weight of the evidence in a summary judgment motion. If a triable issue of fact exists, summary judgment must be denied. The plaintiff has put forth sufficient evidence to raise a triable issue of fact as to the actual damages plaintiff has incurred. This is an issue for the trier of fact to decide.
D. Does Common Law Fraud Permit Punitive Damages?
In general, punitive damages are not recoverable in an ordinary case where fraud and deceit are alleged. When the fraud is gross, involves a high degree of moral culpability and is aimed at the general public, punitive damages are recoverable. Even in cases where the public interest is not involved, if the defendant’s actions are gross, wanton or wilful or if the defendant engaged in other morally culpable conduct of a high degree, punitive damages are recoverable (2 NY PJI3d 179 [2006]).
Identity theft has become a prevalent and growing problem in our society with individuals having their credit ratings damaged *656 or destroyed and causing untold financial burdens on these innocent victims. As stated above, the New York State Legislature, recognizing this special category of fraudulent conduct, gave individuals certain civil remedies when they suffered this harm. At the same time that the Legislature codified the above civil remedies, it recognized that a wrong was being committed against society and passed several new sections of the Penal Law. These new statutes defined offenses involving identity theft (Penal Law § 190.77) and created six crimes dealing with identity theft. Effective November 1, 2002 the new crimes include: identity theft in the third degree — a class A misdemeanor; in the second degree — a class E felony; and in the first degree — a class D felony.
Analysis of the reasons for the passage of this legislation leads to the conclusion that the fraud perpetrated by identity theft, such as is alleged by the plaintiff herein, is of such a nature that, even without these November 1, 2002 statutes, the plaintiff should be permitted to seek punitive damages. The harm, though, to an individual does have repercussions for the public at large, resulting in credit issuers having to charge higher interest rates and fees to the public in order to offset the costs incurred through fraudulent activities such as identity theft.
Even if the plaintiff’s cause of action is solely based on common-law fraud, plaintiff would be able to seek punitive damages. The actions of the defendants, if proven, involve a high degree of moral culpability and caused harm not only to the plaintiff but to the general public as well. Defendant Guzzone’s motion to dismiss must be denied. If the plaintiff prevails on her claims, she would be able to seek to collect, not only actual damages, but punitive damages as well, under a theory of common-law fraud.
E. Has Plaintiff Pleaded a Viable Cause of Action against Defendant Guzzone?
Paragraphs 127 to 142 of the complaint assert plaintiffs allegations against defendant Guzzone. As stated above, plaintiff has not asserted a cause of action for statutory identity theft, but has pleaded a claim for common-law fraud. Analysis of plaintiffs complaint discloses several other theories of recovery. Defendant has sought dismissal of these claims.
1. Conspiracy to Commit Fraud
Plaintiff alleges that Guzzone “conspired with Defendant Edythe Dagostino in obtaining credit cards in Plaintiffs name.” Although not labeled as such, this appears to be a cause of ac *657 tion alleging that Guzzone conspired to commit fraud. A “mere conspiracy to commit a fraud is never of itself a cause of action” (Brackett v Griswold, 112 NY 454, 466 [1889]; Crispino v Greenpoint Mtge. Corp., 2 AD3d 478 [2003]; Agostini v Sobol, 304 AD2d 395 [2003]). The Brackett case and others have held that there is no separate cause of action for conspiracy to commit fraud since the principles which govern the action for fraud and permit a recovery by a plaintiff are the same; there must be some overt act undertaken to carry out the fraud in order to warrant the finding of liability and the subsequent awarding of damages, if any.
Plaintiffs separate cause of action for conspiracy to commit fraud is dismissed.
2. Negligence in Supervising His Checking Account
Defendant Guzzone in his pleadings has admitted that two checks were written from his personal checking account to pay a Bergdorf Goodman bill incurred in the name of the plaintiff as a result of the identity theft by the defendants herein. Guzzone stated that he did not sign either of those checks. It is admitted by Edythe Dagostino in her deposition that she had access to and signed those checks.
New York has moved away from the definition of “negligence” that used to be taught in law school. In order to establish negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff and that the defendant breached that duty. The issue of causation of an injury is now dealt with separately by analyzing the defendant’s actions as to whether or not they were a “substantial factor” in causing injury to the plaintiff. This has replaced the old “proximate cause” theory.
Analysis of the facts of this case leads to the conclusion that defendant Guzzone owed no legal duty to the plaintiff to supervise and control his checkbook. It has been held that a defendant generally has no legal duty to control the conduct of third persons so as to prevent them from harming others, even where, as a practical matter, the defendant can exercise such control (1 NY PJI3d 203 [2006]). In fact, the alleged negligence of the defendant in not supervising his checkbook did not cause any harm to the plaintiff. The checks written on Guzzone’s account for the fraudulently opened charge account, if they cleared, as they apparently did, did not cause the plaintiff any harm, because the account was in fact paid. If the checks did not clear, and the plaintiff had to pay the charges out of her own funds, something she does not allege she did, then, in that *658 case, she might have damages. But the damages in that situation are not from the negligence of the defendant. The damages would arise because of the defendants successfully defrauding the plaintiff.
The plaintiffs cause of action against Guzzone for negligent supervision of defendant’s bank account is dismissed. Plaintiffs allegations of negligent entrusting, negligence in permitting credit card fraud, forgery, identity theft, misrepresentation and reckless disregard are all dismissed as well. The allegations of all of these negligence causes of action are part and parcel of the plaintiff’s cause of action for fraud and do not form the basis of a separate cause of action.
3. Has the Plaintiff Pleaded a Cause of Action of Prima Facie Tort?
Although not specifically pleaded by the plaintiff, do the facts of this case establish a cause of action for prima facie tort? Prima facie tort is often used as a classification for a cause of action arising from the plaintiff suffering the intentional infliction of economic damages without excuse or justification by the defendant’s actions. The elements of a cause of action for prima facie tort are: (1) the intentional infliction of harm; (2) that results in special damages; (3) without excuse or justification; (4) by an act or series of acts that would otherwise be lawful.
Case law in New York has held that to prevail the plaintiff must establish that malevolence was the defendant’s sole motive in acting (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314 [1983]). In an identity theft situation, although the defendants intended to act as they did, and harm to the plaintiff was foreseeable, the main purpose of the defendants’ actions is economic gain for themselves and not to solely cause financial harm to the plaintiff. To prevail on a claim for prima facie tort, the plaintiff would have to prove that the defendants were motivated by the intention to cause her economic harm rather than benefit themselves. It appears that the plaintiff did not suffer any direct financial harm from the defendants’ actions since she has not made any allegation that she had to pay for any of the credit charges the defendants incurred. The facts of this case make prima facie tort unavailable as a cause of action to the plaintiff.
F. Should Plaintiffs Expert Be Precluded?
Attached as an exhibit to plaintiff’s opposition papers is a report from an individual the plaintiff plans to call as an expert to opine on the issue of the damages plaintiff has suffered. The *659 defendant asserts “surprise” in that the expert was never disclosed prior to the plaintiff including the expert’s affidavit and curriculum vitae in the plaintiffs opposition papers and in a letter dated August 30, 2006 addressed to defendant Guzzone’s counsel. It should be noted that defendant’s motion was originally returnable on August 25, 2006 and was adjourned until September 7, 2006. Plaintiffs opposition papers are dated August 30, 2006, the same date as the letter informing defendant’s counsel of the intent to use an expert. Defendant in its reply papers alleges that the plaintiff is not in compliance with the discovery requirements of a prior preliminary conference order issued on November 14, 2003 in Supreme Court and that the expert was not disclosed in the manner required by CPLR 3101 (d).
CPLR 3101 (d) deals with trial preparation and sets forth certain rules for the disclosure of experts. It provides:
“1. Experts, (i) Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert’s opinion. However, where a party for good cause shown retains an expert an insufficient period of time before the commencement of trial to give appropriate notice thereof, the party shall not thereupon be precluded from introducing the expert’s testimony at the trial solely on grounds of noncompliance with this paragraph. In that instance, upon motion of any party, made before or at trial, or on its own initiative, the court may make whatever order may be just.”
The preliminary conference order reveals that the issue of expert discovery was never addressed. In any case, CPLR 3101 (d) (1) gives the court the discretion to structure a solution to disputes in regard to expert disclosure. The court concedes that defendant’s counsel did not receive any prior notice of the plaintiff’s intent to call an expert on economics. In order to prevent any potential prejudice in this regard, the parties are ordered as follows:
1. Plaintiff is to disclose the name of all experts she intends to call as a witness at trial and provide defendant Guzzone with *660 copies of the expert’s report, if any, and curriculum vitae within 30 days of the date of this decision and order. If the plaintiff fails to comply with this order, any such expert shall be precluded from testifying at trial and no report from such expert shall be permitted to be entered into evidence.
2. Upon receiving the name of the expert, defendant Guzzone shall have 30 days to schedule the deposition of any such expert disclosed.
3. All discovery shall be completed within 90 days of the date of this decision and order.
The court will refrain from ruling on the issue of whether or not plaintiffs proposed expert is in fact an expert on the issue of the financial damages the plaintiff suffered as a result of defendant Guzzone allegedly committing identity theft until after discovery in this regard is completed. A review of the expert’s curriculum vitae does not reveal any publications specifically on this area of expertise.
Plaintiff is to provide defendant Guzzone with a statement of any amounts plaintiff is alleging she incurred as actual damages as a result of the identity theft she suffered within 30 days of the date of this decision and order.
Conclusion
As set forth above, plaintiffs sole cause of action is one for common-law fraud. It is a question of fact for the jury to decide as to the liability of defendant Guzzone in the alleged identity theft plaintiff suffered, what actual damages she suffered, if any, and whether or not punitive damages are appropriate.
The issues of plaintiffs expert’s ability to testify and other open discoveiy problems are decided as set forth above.