Matter of City of Troy (Troy Police Benevolent & Protective Assn., Inc.) (2021 NY Slip Op 07589)





Matter of City of Troy (Troy Police Benevolent & Protective Assn., Inc.)


2021 NY Slip Op 07589


Decided on December 30, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 30, 2021

531780
[*1]In the Matter of the Arbitration between City of Troy, Appellant, and Troy Police Benevolent and Protective Association, Inc., Respondent.

Calendar Date:November 22, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Goldberg Segalla LLP, Albany (Jonathan M. Bernstein of counsel), for appellant.
Gleason, Dunn, Walsh & O'Shea, Albany (Mark T. Walsh of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from an order of the Supreme Court (Zwack, J.), entered July 28, 2020 in Rensselaer County, which, among other things, denied petitioner's application pursuant to CPLR 7503 to permanently stay arbitration between the parties.
Petitioner, a municipal corporation, and respondent, the employee organization representing certain employees of petitioner's police department, executed a collective bargaining agreement (hereinafter CBA) with terms that remained in effect at the relevant time. Article XV of the CBA pertains to benefits received by a member who is absent from work due to a job-related injury or illness. As relevant here, the parties also entered into a December 5, 2008 settlement agreement on the same subject, the terms of which were incorporated into the CBA. The instant proceeding involves a police officer employed by petitioner and a member of respondent, who was granted leave from his duties due to a job-related injury or illness and was receiving his full wages, benefits and medical treatment pursuant to General Municipal Law § 207-c. While on leave, this police officer was engaged in work outside his employment as Chief of Police for the Village of Green Island, Albany County. On March 20, 2020, petitioner's Chief of Police sent an email addressing his concern that some members — who were working secondary employment — may not have properly reported or updated this information and directed that all members working secondary employment complete and submit proper forms to obtain appropriate authorization. The police officer duly submitted a request for permission to continue his secondary employment as the Village's Chief of Police, a position he described as purely administrative in nature and limited to 20 hours or less per week. The request was denied. The police officer thereafter filed a grievance, pursuant to article II (K) and article IX (C) (1) of the CBA, which was denied on multiple grounds. In response to respondent's demand for arbitration, petitioner commenced this proceeding pursuant to CPLR 7503 to permanently stay arbitration between the parties. Respondent cross-moved to compel arbitration. Supreme Court denied petitioner's application for a stay and granted respondent's cross motion to compel. Petitioner appeals.
"When deciding whether to stay or compel arbitration under CPLR 7503, courts are concerned only with the threshold determination of arbitrability, and not with the merits of the underlying claim" (Matter of City of Troy [Troy Police Benevolent & Protective Assn., Inc.], 191 AD3d 1203, 1204 [2021] [internal quotation marks and citation omitted]). The threshold determination "involves a two-part inquiry into whether there is any statutory, constitutional or public policy prohibition against arbitration of the grievance. If no prohibition exists, we then ask whether the parties in fact agreed to arbitrate the particular dispute by examining their collective bargaining agreement" (Matter of [*2]City of Troy [Troy Uniformed Firefighters Assn., Local 86, IAFF, AFL-CIO], 195 AD3d 1189, 1190 [2021] [internal quotation marks and citation omitted]). The two inquiries are commonly referred to as the "may-they-arbitrate" prong and the "did-they-agree-to-arbitrate" prong, respectively, and it is only if the first is answered in the affirmative that the second inquiry comes into play (see Matter of Village of Endicott [Village of Endicott Police Benevolent Assn., Inc.], 182 AD3d 738, 740 [2020]). Finally, "any doubts as to whether an issue is arbitrable will be resolved in favor of arbitration" (Matter of City of Troy [Troy Police Benevolent & Protective Assn., Inc.], 191 AD3d at 1204 [internal quotation marks and citation omitted]).
Petitioner asserts that as arbitration is barred by statutory law and attendant public policy, the parties may not arbitrate. Specifically, petitioner argues that General Municipal Law § 208-d grants it the right to pre-approve any extra outside employment. Likewise, petitioner contends that General Municipal Law § 207-c grants it the right to decide the course of treatment and appropriateness of light duty assignments in order to ensure that an injured police officer has a speedy recovery and promptly returns to work. Therefore, petitioner contends, allowing arbitration would deprive petitioner of the discretion granted to it by the Legislature under these statutes. "'[J]udicial intervention on public policy grounds constitutes a narrow exception to the otherwise broad power of parties to agree to arbitrate all of the disputes arising out of their juridical relationships, and the correlative, expansive power of arbitrators to fashion fair determinations of the parties' rights and remedies'" (Matter of City of Troy [Troy Police Benevolent & Protective Assn., Inc.], 191 AD3d at 1205, quoting Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1, 6-7 [2002]). This exception is very limited and only applies when a "statute or decisional law, prohibit[s], in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator" (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d at 7 [internal quotation marks and citation omitted]).
General Municipal Law § 208-d provides that "any member of a police force . . . of any municipality may engage in extra work for another employer outside his [or her] regular hours of duty for not exceeding [20] hours a week provided that such extra work does not interfere or conflict with his [or her] regular duties as a member of the police force . . . or his [or her] availability for emergency duty nor affect his [or her] physical condition to the extent that it impairs his [or her] ability to efficiently perform such duties and further provided that the type of employment shall first be approved by the appropriate . . . police department." General Municipal Law[*3]§ 207-c (1) provides, in relevant part, that a police officer "who is injured in the performance of his or her duties or who is taken sick as a result of the performance of his or her duties so as to necessitate medical or other lawful remedial treatment shall be paid by the municipality . . . by which he or she is employed the full amount of his or her regular salary or wages
. . . until his or her disability arising therefrom has ceased, and, in addition[,] such municipality . . . shall be liable for all medical treatment and hospital care necessitated by reason of such injury or illness."
Section XV (E) of the CBA provides that "[a]ny member who is unfit for duty due to a job-related injury or illness of a temporary nature shall, during such absence from duty, continue to receive all benefits under [the CBA] to which he [or she] would otherwise be entitled." Paragraph 3 of the settlement agreement provides "[respondent] members who are physically injured and on sick leave, [General Municipal Law] § 207-c leave and/or light duty status will be permitted to work outside employment as follows: (a) non-public safety work; [and] (b) public safety work that can be performed notwithstanding the physical injury which is the basis for the leave." Paragraph 4 of the settlement agreement provides that "[respondent] members will be permitted to work outside employment if they are sick/ill only upon receiving approval from the Chief of Police or his [or her] designee which approval shall not be unreasonably withheld. In this regard, if the illness is something which prevents some aspect of police work but does not prevent other work, withholding such approval would be considered unreasonable."
The first inquiry, the "may-they-arbitrate" prong, focuses on the subject matter of the dispute. The dispute focuses on approval of secondary employment while on leave. General Municipal Law §§ 207-c and 208-d provide for procedures and limitations for secondary work of police officers, and the Legislature did not express an "intent[] to remove the review procedures from mandatory bargaining" (Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd., 95 NY2d 73, 81 [2000]). Furthermore, as part of its collective bargaining negotiations, a municipality may "provide benefits to its employees in excess of those provided by General Municipal Law § 207-c" (Matter of City of Plattsburgh [Plattsburgh Police Officers Union AFSCME Local 82], 250 AD2d 327, 329 [1998], lv denied 93 NY2d 807 [1999]). Here, petitioner agreed to permit its police officers to receive benefits from outside employment while on various types of sick leave, including leave pursuant to General Municipal Law § 207-c. Petitioner's discretion in permitting outside employment is conditioned by the terms of the settlement agreement in that "approval shall not be unreasonably withheld." "Such a self-imposed restriction on its own discretion does not violate public policy" (Matter of City [*4]of Troy [Troy Police Benevolent & Protective Assn., Inc.], 191 AD3d at 1207). Under the terms of the agreement, petitioner retained its discretion in approving outside employment to a member while on General Municipal Law § 207-c leave but agreed that it would not unreasonably withhold approval. Accordingly, "petitioner has not demonstrated that it would be unlawful under any statute, precedent or public policy to refer this grievance to arbitration" (Matter of City of Ithaca [Ithaca Paid Fire Fighters Assn., IAFF, Local 737], 29 AD3d 1129, 1131 [2006]).
We do not need to proceed to the second prong, "did-they-agree-to-arbitrate," as petitioner raises only the "may-they-arbitrate" inquiry, essentially conceding the second prong (see Matter of City of Troy [Troy Police Benevolent & Protective Assn., Inc.], 191 AD3d at 1205). Under these circumstances, Supreme Court properly denied petitioner's application to stay arbitration and properly granted respondent's cross motion to compel arbitration (see Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd., 95 NY2d at 78; Matter of City of Plattsburgh [Plattsburgh Police Officers Union AFSCME Local 82], 250 AD2d at 329). Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Garry, P.J., Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.